IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacques Farr, | ) CIV-14-2128-PHX-SRB (MHB) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Charles L Ryan, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT COURT:

Petitioner Jacques Farr has filed a pro se Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5). Respondents filed an Answer (Doc. 65), and Petitioner has filed a Reply (Doc. 74).

**BACKGROUND**

Petitioner was convicted in Maricopa County Superior Court, case #CR 2013-423168, of one count of theft, one count of theft of a means of transportation, and one count of trafficking in stolen property, and was sentenced to a 3.5-year term of imprisonment.

The Arizona Court of Appeals described the facts of this case as follows:

¶ 2    During the fall of 2009, Farr agreed to help D.W.[] move out of a house where D.W. was staying. Before doing so, Farr took D.W. (who was on parole) to a parole office where D.W. was taken into custody. D.W. surrendered his keys and wallet to the parole officer, asking the parole officer to tell Farr to take them to Frank Meadows, who owned the house where D.W. had been staying. When Farr went to Meadows' house with a friend, he took all of D.W.'s belongings.

¶ 3    In the first part of 2010, Farr sold D.W.'s 1991 Chevy pickup truck to R.S.R. for $1,000. The title had D.W.'s signature notarized on the seller section, but that signature did not match D.W.'s actual signature.

¶ 4    In May 2013, the State charged Farr in a direct complaint with count one, theft of means of transportation, a Class 3 felony; count two, trafficking in stolen property in the second degree, a Class 3 felony, and count three, theft, a Class 6 felony. After failed plea negotiations, the State charged Farr by indictment with the same three offenses. Before trial, while represented by counsel, Farr filed several pro se motions. Other than granting a pro se motion to change counsel, the superior court summarily denied all of Farr's pro se motions.

¶ 5    During a five-day trial in April and May 2014, the State presented six witnesses: D.W.; R.S.R.; the person who helped Farr move D.W.'s possessions out of Meadows' house; Meadows and two detectives. The day after R.S.R. testified, the State moved to amend the indictment to conform to the evidence presented concerning the date range for the sale of the truck to R.S.R. *See* Ariz. R.Crim. P. 13.5(b) (2016).[] Over Farr's objection, the superior court allowed the amendment as it was consistent with the trial evidence and encompassed the general time frame of the indictment.

¶ 6    After the State rested, Farr presented two witnesses: the notary who witnessed the signature on the title and a friend who saw the transaction; Farr also elected to testify on his own behalf. Farr testified that, after he helped D.W. with a problem, D.W. sold Farr the truck for $500. Farr testified that D.W. signed the title, and his signature was notarized, before D.W. was taken into custody, leaving the buyer line of the title blank.

¶ 7    After final instructions and closing argument, the jury deliberated and found Farr guilty as charged and found, for the theft verdict, that Farr controlled property valued at $1,000 or more. At sentencing, after a proper colloquy, Farr admitted a prior felony conviction from 1989. After considering the presentence report and hearing from counsel as well as Farr, his father, wife and son, the superior court sentenced Farr to presumptive concurrent sentences of 3.5 years in prison for counts one and two and 1 year in prison for count three.

State v. Farr, 2016 WL 1425804 (Ariz. Ct. App. April 12, 2016).

On direct appeal, Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that she had searched the record, but found no arguable question of law that is not frivolous, and asking the court to examine the record for reversible error. (Exh. K.) Thereafter, Petitioner filed a pro se "supplemental brief" alleging the following claims: (1) that the court erred in its denial of pre-trial pro se motions; (2) that the State failed to present exculpatory evidence to the grand jury; (3) that his right to a speedy trial was violated; (4) that the court erred by allowing the State to amend the indictment; (5) that he was denied due process by pre-indictment delay; (6) that D.W. should not have been allowed

- 2 -

to testify as he was incompetent; (7) that the court erred in giving jury instructions regarding the notary public; (8) that the court erred in not allowing the release of defendant pending appeal; (9) that the court erred by allowing defendant to be cross-examined with his prior conviction; (10) that the court erred by failing to consider the special action as a writ of habeas corpus; (11) that his trial counsel was ineffective; and (12) that there was insufficient evidence to support his convictions and that he is actually innocent. (Exhs. L, M.)

The Arizona Court of Appeals affirmed Petitioner's convictions and sentences on April 12, 2016. (Exh. M.) The Arizona Supreme Court denied the petition for review on August 22, 2016. (Exh. M.)

The record reflects that on May 3, 2016, Petitioner filed a notice of post-conviction relief. (Exh. N.) Defense counsel filed a notice of completion of post-conviction review informing the court that after completing review of the record, he was unable to find any meritorious claims for relief in which to raise in post-conviction relief proceedings. (Exh. O.) Counsel also requested an extension of time for Petitioner to file a pro per PCR petition. (Exh. O.)

On December 29, 2016, Petitioner filed a pro per PCR petition alleging the following claims: (1) denial of pre-trial pro se motions; (2) failure of the state to present exculpatory evidence to the grand jury; (3) violation of speedy trial right (4) amendment of the indictment during trial; (5) pre-indictment delay; (6) incompetent witness permitted to testify at trial; (7) jury instructions regarding notary public; (8) failure to allow release of defendant pending appeal; (9) use of defendant's prior conviction for impeachment; (10) denial of October 2014 special action complaint; (11) ineffective assistance of trial counsel in that "Every Court appointed lawyer did absolutely nothing to insure that the rights of the Petitioner was [sic] protected or enforced," and in failing present evidence of a Craigslist ad and satellite image of the pick-up truck from October 2009; and (12) insufficiency of evidence and actual innocence. (Exhs P, R.)

On June 12, 2017, the state court dismissed the petition finding that grounds one through ten and twelve were precluded pursuant to Rule 32.2. As to the ineffective assistance

claim alleged in ground eleven, the court found that Petitioner failed to state a colorable claim for relief. (Exh. R.) Petitioner did not file a petition for review in the Arizona Court of Appeals. (Doc. 59.)

In his Amended Petition, Petitioner names Charles L. Ryan as Respondent and the Arizona Attorney General as an Additional Respondent. (Doc. 5.) Petitioner alleges five grounds for relief. In Ground One, Petitioner alleges that his right to due process and right to a speedy trial were violated, in violation of the Sixth and Fourteenth Amendments. In Ground Two, Petitioner alleges that the State committed prosecutorial misconduct, in violation of the Fifth, Sixth, Eight, and Fourteenth Amendments. In Ground Three, Petitioner alleges that he received the ineffective assistance of counsel. In Ground Four, Petitioner alleges that he was prosecuted in a "biased and unfair venue." In Ground Five, Petitioner appears to allege that the grand jury process in his case was defective, stating that it was an "unqualified/illegal grand jury."

In their Answer, Respondents argue that Ground One fails on the merits, Grounds Two and Three are procedurally defaulted, and Grounds Four and Five are not cognizable in federal habeas proceedings.

## DISCUSSION

### A.    Standards of Review

#### 1.    Merits

Pursuant to the AEDPA[1], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard

---

[1] Antiterrorism and Effective Death Penalty Act of 1996.

- 4 -

of review). This standard is "difficult to meet." Harrington v. Richter, 562 U.S. 86, 102 (2011). It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

### 2. Exhaustion and Procedural Default

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78

(1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run

around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is ordinarily barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

(9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

Specifically, in Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona courts have consistently applied Arizona's procedural rules to bar further review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See, e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. See Reed v. Ross, 468 U.S. 1, 9 (1984). The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. See Rhines v. Weber, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**B.    Ground One**

In Ground One, Petitioner alleges that his right to due process and right to a speedy trial were violated, in violation of the Sixth and Fourteenth Amendments. (Doc. 5 at 6.) Petitioner states that "[t]here appears to be no explanation as to why the government delayed obtaining an indictment for such a long [length] of time ... the government intentionally

delayed the prosecution to obtain a tactical advantage ... ." Petitioner contends that "[m]emories have faded so the petitioner has lost the ability to elicit evidence that has now been forgotten."

In denying this claim on direct review, the Arizona Court of Appeals stated:

III. Speedy Trial.

¶ 13    Farr argues his right to a speedy trial was violated and the case should have been dismissed. Farr claims trial should have started no later than 120 days after his initial appearance or 90 days after his arraignment. *See* Ariz. R.Crim. P. 8.2(c). Farr, however, was not in custody pretrial, meaning trial was to start no more than 180 days from arraignment. *See* Ariz. R.Crim. P. 8.2(a)(2). Farr has shown no violation of this 180–day limitation, let alone how such a violation prejudiced him at trial. *See State v. Vasko*, 193 Ariz. 142, 143 ¶ 2 (App.1998) ("[I]n the absence of a showing of prejudice, a speedy trial violation raised as error on appeal after conviction does not warrant reversal of that conviction.").

¶ 14    Farr also claims a violation of his speedy trial rights under the Sixth Amendment of the United States Constitution, as incorporated through the Fourteenth Amendment. Under the Sixth Amendment, "[t]here is no bright line rule for how quickly a trial must occur. In evaluating such claims, courts weigh (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant." *State v. Parker*, 231 Ariz. 391, 398 ¶ 9 (2013) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Farr's trial began on April 30, 2014, 342 days after the State filed the direct complaint. An early January 2014 trial date was continued when the court granted Farr's pro se motion for change of counsel two days before trial. Another time, trial was continued because of the State's trial conflict. Farr did not make any speedy trial objection until April 28, 2014, two days before trial began, and that objection only cited Rule 8; he did not cite the United States Constitution. On this record, Farr has shown no violation of his Sixth Amendment speedy trial rights.

*      *      *

V. Pre–Indictment Delay.

¶ 16    Farr claims he was denied due process because he was not charged until four years after the offenses and two years after the completion of the police investigation. "To establish that pre-indictment delay has denied a defendant due process, there must be a showing that the prosecution intentionally delayed proceedings to gain a tactical advantage over the defendant or to harass him, and that the defendant has actually been prejudiced by the delay." *State v. Broughton*, 156 Ariz. 394, 397 (1988). Farr claims he was prejudiced by the delay but did not argue or present any support showing that the delay was intentional. Trial testimony shows the contrary.

¶ 17    Two detectives testified at trial that the investigation began in March or April 2011. After the case was transferred to a new detective, the investigation continued at least through December 2012, when the detective interviewed Farr. The State filed a direct complaint six months later, not the

> two years Farr claims, and followed with an indictment. On this record, no evidence or implication would support a finding of intentional delay to obtain a tactical advantage. *See Broughton*, 156 Ariz. at 397. Accordingly, Farr has shown no due process denial by pre-indictment delay.

Farr, 2016 WL 1425804.

The Sixth Amendment's provision of a "right to a speedy and public trial ..." applies to state court proceedings pursuant to the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 222–23 (1967). The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." Barker v. Wingo, 407 U.S. 514, 522 (1972). In Barker, the Court refused to quantify the right or to predicate the right on a defendant's explicit request for a speedy trial. See Vermont v. Brillon, 556 U.S. 81, 89–90 (2009). Rejecting such "inflexible approaches," Barker established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 529, 530. Some of the factors that should be weighed when considering such claims include the length of and reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant of the delay. See Brillon, 556 U.S. at 89–90; Barker, 407 U.S. at 530. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. See Barker, 407 U.S. at 530. Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992). If this threshold is not met, the Court need not proceed with the other Barker factors. See id. at 651–52; Barker, 407 U.S. at 530; United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). Deliberate delay "to hamper the defense" weighs heavily against the prosecution. Barker, 407 U.S. at 531. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. Additionally, because defense counsel is defendant's agent, delay caused by the defendant's counsel is charged against the defendant. See Brillon, 556 U.S. at 90–91.

Further, as to any allegation of pre-indictment delay, the Supreme Court has acknowledged that, although statutes of limitations are the primary protection against overly stale criminal charges, the "Due Process Clause has a limited role to play in protecting against oppressive delay." United States v. Lovasco, 431 U.S. 783, 789 (1977). The Court has also held that a due process violation is established when the delay of the indictment violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." Id. at 790 (internal citations and quotation marks omitted). Establishing a denial of due process through pre-indictment delay requires: (1) proof of actual, non-speculative prejudice from the delay; and (2) a showing that the delay, when balanced against the reason for the delay, offends those "'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" United States v. Sherlock, 962 F.2d 1349, 1353–54 (9th Cir. 1992) (quoting Lovasco, 431 U.S. at 790). Generally, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U .S. at 796.

Regarding Petitioner's speedy trial claim, the Court finds that the state court's determination was not contrary to, nor an unreasonable application of federal law. The Court's review of the Barker factors reveals that Petitioner's trial began on April 30, 2014 – 342 days after the State filed the direct complaint. See Farr, 2016 WL 1425804. This factor alone defeats Petitioner's speedy trial claim since the delay is not "presumptively prejudicial." See Doggett, 505 U.S. at 651-52 (Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. If this threshold is not met, the Court need not proceed with the other Barker factors.). Moreover, a review of the other factors reflects no violation of Petitioner's constitutional rights. Specifically, the trial court continued an early January 2014 trial date when it granted Petitioner's pro se motion for change of counsel two days before trial. The court continued trial on another occasion when the State had a trial conflict. Additionally, Petitioner failed to assert his right to a speedy trial until April 28, 2014 – two days before the trial began. Lastly, the record reflects that

Petitioner was not in custody pretrial, and beyond his general and conclusory allegations, Petitioner has failed to demonstrate prejudice suffered as a result of any alleged delay. "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995); see United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986) (offering bare allegations that potential injuries have actually been suffered is "speculative and insufficient to establish a denial of due process").

To the extent Petitioner raises an allegation of pre-indictment delay, the Court again finds that the state court's determination was not contrary to, nor an unreasonable application of federal. Petitioner has not demonstrated actual, non-speculative prejudice resulting from alleged pre-indictment delay. A petitioner must do more than assert that "witnesses' memories may have faded with the passage of time." Prantil v. California, 843 F.2d 314, 318 (9th Cir. 1988).

The Court will recommend that Petitioner's claim in Ground One be denied and dismissed.

**C.    Ground Two**

In Ground Two, Petitioner alleges that the State committed prosecutorial misconduct, in violation of the Fifth, Sixth, Eight, and Fourteenth Amendments. (Doc. 5 at 7.) Petitioner states that the "prosecutor and police department filed false charges and collaborated together to mislead the court and the jury into believing the 1991 chev. pickup was stolen."

Petitioner failed to raise the specific claim asserted in Ground Two on direct appeal or in his post-conviction relief proceedings. (Exhs. K, L, M, P, R.) Thus, Petitioner failed to fairly present Ground Two in state court. See Picard, 404 U.S. at 275-78. Failure to fairly present Ground Two has resulted in procedural default because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 32.2(a), 32.4(a).

Although a procedural default may be overcome upon a showing of cause and prejudice or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750-51, Petitioner has not established or argued that any exception to procedural default applies.

In his Reply, Petitioner argues merits and appears to assert that his default is excused under Martinez v. Ryan, 566 U.S. 1 (2012). In Martinez, the Supreme Court created a "narrow exception" to the principle that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 566 U.S. at 9. The Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id.

"Cause" is established under Martinez when:

(1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral review proceeding.

Trevino v. Thaler, 569 U.S. 413, 423 (2013) (citing Martinez). In Nguyen v. Curry, 736 F.3d 1287, 1295 (9th Cir. 2013), the Ninth Circuit held that "the *Martinez* standard for cause applies to all Sixth Amendment ineffective-assistance claims, both to trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding."

The Martinez exception applies only to the ineffectiveness of post-conviction counsel in the initial post-conviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." 566 U.S. at 16. Rather, Martinez is concerned that, if ineffective assistance of counsel claims were not brought in the collateral proceeding that provided the first occasion to raise such claims, then the claims could not be brought at all. See id. at 9-11. Therefore, a petitioner may not assert "cause" to overcome the procedural bar based on attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Id. at 16.

- 14 -

Petitioner's claim alleged in Ground Two does not assert ineffective assistance of counsel. Therefore, Martinez does not apply.

Petitioner has also not demonstrated a fundamental miscarriage of justice. A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice." Schlup, 513 U.S. at 327. The standard for establishing a Schlup procedural gateway claim is "demanding." House v. Bell, 547 U.S. 518, 538 (2006). The petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Schlup, 513 U.S. at 316. Under Schlup, to overcome the procedural hurdle created by failing to properly present his claims to the state courts, a petitioner "must demonstrate that the constitutional violations he alleges ha[ve] probably resulted in the conviction of one who is actually innocent, such that a federal court's refusal to hear the defaulted claims would be a 'miscarriage of justice.'" House, 547 U.S. at 555-56 (quoting Schlup, 513 at 326, 327). To meet this standard, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327. Petitioner has failed to establish, let alone allege, a sufficient showing of actual innocence to establish a miscarriage of justice. Therefore, Petitioner cannot excuse his procedural default on this basis.

**D.    Ground Three**

In Ground Three, Petitioner alleges that he received the ineffective assistance of counsel. (Doc. 5 at 8.) Petitioner contends that counsel "failed or deliberately did not introduce important documents" and exculpable evidence, "failed to object to Petitioner not having a speedy trial," "did not object to the name change on the subpoena," "did not object to prosecutorial misconduct," "did not object to almost all of the Petitioner's motions being denied," and "did absolutely nothing to help this Petitioner in his case."

In ground 11 of his pro per PCR petition, Petitioner alleged ineffective assistance of trial counsel in that "Every Court appointed lawyer did absolutely nothing to insure that the rights of the Petitioner was [sic] protected or enforced," and in failing present evidence of a Craigslist ad and satellite image of the pick-up truck from October 2009. (Exhs P, R.) The state court dismissed the claim stating, as follows:

> The Petitioner makes some very general assertions regarding this issue such as that "Every Court appointed lawyer did absolutely nothing to insure that the rights of the Petitioner was [sic] protected or enforced." [Pet. at 9.] Such an assertion without something more specific fails to establish a claim for ineffective assistance.

> The Petitioner further asserts that evidence of a Craigslist ad and a satellite image of the pick-up truck from October 2009 were not presented to the jury. Petitioner however, fails to explain how counsel was ineffective in failing to present this evidence. Moreover, Petitioner testified at trial that he sold the truck in October 2009 through a Craigslist ad and that it was purchased in October 2009. While presenting the jury with photos or physical copies of the ad would have supported Petitioners testimony, the Court cannot find there is a reasonable probability that the outcome of the case would have been different had those documents been presented to the jury.

> The Court finds that the Defendant has failed to state a colorable claim on any of his stated grounds for ineffective assistance of counsel and that all of his other claims raised are precluded.

> IT IS ORDERED summarily dismissing the Defendant's Pro-Se Petition for Post-Conviction Relief.

(Exh. R.) Petitioner did not file a petition for review in the Arizona Court of Appeals. (Doc. 59.)

Although it appears that Petitioner may have presented similar ineffective assistance claims in his PCR petition, he failed to file a petition for review to the appellate court. As such, Petitioner failed to fairly present his claim of ineffective assistance of counsel. See Swoopes,196 F.3d at 1010; Roettgen, 33 F.3d at 38. Failure to fairly present Ground Three has resulted in procedural default because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 32.2(a), 32.4(a).

In his Reply, Petitioner again argues merits and contends that his default is excused under Martinez. Since the Martinez exception applies only to the ineffectiveness of post-conviction counsel in the initial post-conviction review proceeding, Martinez does not

apply. See Martinez, 566 U.S. at 16 (Martinez "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." A petitioner may not assert "cause" to overcome the procedural bar based on attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.").

In any event, Petitioner has not demonstrated a "substantial" claim of ineffective assistance of counsel. A "substantial" claim "has some merit." Id. at 14. Like the standard for issuing a certificate of appealability, to establish a "substantial" claim, a petitioner must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Detrich v. Ryan, 740 F.3d 1237, 1245 (9th Cir. 2013) (internal quotations omitted). In other words, a claim is "'insubstantial' if it does not have any merit or is wholly without factual support." Id. Determining whether an ineffective assistance of counsel claim is "substantial" requires a district court to examine the claim under the standards of Strickland v. Washington, 466 U.S. 668 (1984).

To establish a claim of ineffective assistance of counsel a petitioner must demonstrate that counsel's performance was deficient under prevailing professional standards, and that he suffered prejudice as a result of that deficient performance. See id. at 687-88. To establish deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 699. A petitioner's allegations and supporting evidence must withstand the court's "highly deferential" scrutiny of counsel's performance, and overcome the "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 689-90. A petitioner bears the burden of showing that counsel's assistance was "neither reasonable nor the result of sound trial strategy," Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001), and actions by counsel that "'might be considered sound trial strategy'" do not

constitute ineffective assistance. Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To establish prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." Id. Courts should not presume prejudice. See Jackson v. Calderon, 211 F.3d 1148, 1155 (9th Cir. 2000). Rather, a petitioner must affirmatively prove actual prejudice, and the possibility that a petitioner suffered prejudice is insufficient to establish Strickland's prejudice prong. See Cooper v. Calderon, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A petitioner] must 'affirmatively prove prejudice.' ... This requires showing more than the possibility that he was prejudiced by counsel's errors; he must demonstrate that the errors actually prejudiced him.") (quoting Strickland, 466 U.S. at 693). However, the court need not determine whether counsel's performance was deficient if the court can reject the claim of ineffectiveness based on the lack of prejudice. See Jackson, 211 F.3d at 1155 n.3 (the court may proceed directly to the prejudice prong).

Petitioner supports his claim of ineffective assistance with a narrative of unsupported, conclusory statements regarding what counsel did wrong in this case. Petitioner fails to explain his attorney's deficient performance and does not even attempt to discuss resulting prejudice. Accordingly, Petitioner's allegations, unsupported by specifics, do not establish a substantial claim of ineffective assistance of counsel. See, e.g., Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (conclusory allegations of ineffective assistance do not warrant relief); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (same). Thus, Petitioner fails to establish cause for procedural default of Ground Three under Martinez.

**E.    Grounds Four and Five**

In Ground Four, Petitioner contends that he was prosecuted in a "biased and unfair venue." Petitioner argues that he was assigned "a Judge Pro Tem who actually helps train prosecutors for Maricopa County and through the many justified objections and motions I filed none were even brought to be heard." Petitioner states that he "cannot and will not get

an impartial or unbiased decision from Maricopa County Superior Court ... ." The Court notes that Petitioner does not allege any violation of the Constitution or laws or treaties of the United States, including, any allegation of unfair venue based on prejudicial pretrial publicity. In Ground Five, Petitioner alleges that the grand jury process in his case was defective. Petitioner asserts a "direct violation of Rule 12.2 Arizona Rules of Criminal Procedure," stating that it was an "unqualified/illegal grand jury." (Doc. 5 at 9-10.)

Initially, the Court finds that Petitioner failed to raise the specific claim asserted in Ground Four on direct appeal or in his post-conviction relief proceedings. (Exhs. K, L, M, P, R.) Thus, Petitioner failed to fairly present Ground Four in state court. See Picard, 404 U.S. at 275-78. Failure to fairly present Ground Four has resulted in procedural default because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 32.2(a), 32.4(a). Petitioner has not established that any exception to procedural default applies.

In any event, Petitioner's claim is unfounded. Petitioner's allegations are conclusory – he fails to point to any specific evidence demonstrating that he was deprived of a fair trial. His conclusory allegations are insufficient. See Jones, 66 F.3d at 205.

Moreover, Petitioner's claims related to venue (Ground Four) and violations of Rule 12.2 of the Arizona Rules of Criminal Procedure (Ground Five) as alleged are not amenable to federal habeas corpus review. See 28 U.S.C. § 2254(a) (the scope of federal habeas corpus review is limited to challenges to a state court judgment based on alleged violations of the Constitution or laws or treaties of the United States). The habeas statute unambiguously provides that "a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). And, the Court has repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. at 67–68.

Accordingly, Petitioner's claims regarding venue and defective grand jury in violation of Rule 12.2 Arizona Rules of Criminal Procedure alleged in Grounds Four and Five are not cognizable on federal habeas corpus review.

**CONCLUSION**

Having determined that Ground One fails on the merits, Grounds Two and Three are procedurally defaulted, and Grounds Four and Five are not cognizable in habeas proceedings, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure

timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 6th day of June, 2018.

Michelle H. Burns
United States Magistrate Judge